**IN THE COURT OF APPEALS OF IOWA**

No. 14-1516
Filed November 26, 2014

**IN THE INTEREST OF G.B.,**
**Minor Child,**

**K.B., Father,**
    Appellant,

**L.R., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A father and mother appeal separately from the order terminating their parental rights. **REVERSED ON BOTH APPEALS AND REMANDED.**

Andrew Tullar of Tullar Law Firm, P.L.C., Des Moines, for appellant father.

Stephie N. Tran, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee State.

Erin E. Mayfield of the Youth Law Center, for minor child.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

A mother and father separately appeal from the order terminating their parental rights to their child, G.B. We are compelled by the record to reverse the termination of both the mother's and the father's parental rights. The juvenile court did not make the findings required to terminate under Iowa Code sections 232.116((1)(d), (e), or (*l*) (2013). Because the court did not find G.B. was abused or neglected prior to the child-in-need-of-assistance adjudication; the parents did not fail to maintain significant and meaningful contact with G.B.; and both the State and the court quoted an outdated version of section 232.116(1)(*l*) and did not make the proper finding of a "severe substance-related disorder," the terminations cannot stand. We reverse the termination of the mother's and father's parental rights and remand for further proceedings.

**I. Background Facts and Proceedings.**

G.B. was born in March 2010. The family first came to the attention of the Iowa Department of Human Services (DHS) in September 2013, due to the parents' use of methamphetamine and a registered sex offender being apprehended in the parents' home. The father was arrested for violation of probation for continued use of drugs and incarcerated on September 5, 2013, during the child protective assessment. G.B. was temporarily removed from the mother's care.

On October 23, 2013, a combined removal and adjudication hearing was held. G.B. was adjudicated a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(b), (c)(2), and (n). The court found removal from the parents' care was still necessary because "parents' unresolved substance

abuse, father is on probation and has not complied with the probation requirements, mother has allowed a registered sex offender and other individuals who use methamphetamine to be around the child." The court also noted that the mother "has an extensive history of using meth, mother tested positive for methamphetamine [on September 13, 2013]," and the "[f]ather has used methamphetamine and is incarcerated and unavailable at this time."

The mother started outpatient drug rehabilitation at House of Mercy on October 15, 2013. She ended treatment on November 21, 2013, and, by her own admission, immediately relapsed using both marijuana and methamphetamine. She entered a residential treatment program at MECCA on November 22, 2013. Meanwhile, the father remained incarcerated at a correctional facility.

The court held an uncontested dispositional hearing on November 26, 2013, in which it confirmed G.B. was a CINA and maintained the child's placement with the foster family and legal custody with DHS.

The State filed a petition to terminate both the mother's and father's parental rights to G.B. on March 7, 2014. The court held a hearing on the petition over three dates: May 20, May 28, and June 20, 2014.

At the time of hearing, the mother was twenty-nine years old. She testified she began using alcohol at age twelve, marijuana at age thirteen, cocaine at age sixteen, and methamphetamine at age seventeen. She and the father had been involved in a relationship for approximately ten years. During that time, they had a history of using together, sometimes as often as daily. The mother attended multiple rehabilitation programs during the pendency of the case and relapsed

multiple times. She admitted regularly using both marijuana and methamphetamine from January 17 to March 7, 2014. During that time, the mother had continued to visit G.B. and did not report her use to DHS or her therapist. She had since completed an inpatient rehabilitation program and had moved back to the home from which G.B. was removed. She had obtained a part-time job and was hoping to buy a car in the future. She testified that she was still in a relationship with the father although both still needed to work on their individual issues and sobriety. She was receiving supervised visits with G.B. and attending therapy.

The father, who was also twenty-nine at the time of the hearing, testified to a similar past of addiction. He began using marijuana at age twelve, alcohol at age thirteen, cocaine at age fifteen, and methamphetamine at age fifteen. He testified he had last used on September 1, 2013, right before he was incarcerated for violation of his probation. The father had spent most of the pendency of the case incarcerated or in Fort Des Moines. He moved in with his grandmother after he was released and stays with the mother in his former residence on Friday and Saturday nights. He had obtained full-time employment and continued to engage in therapy, although he did not believe it was necessary. He also received supervised visits with G.B. Like the mother, he testified his intention was to remain in a relationship with the mother even though they had used drugs together in the past and he was advised to avoid such friends.

The court filed an order terminating both the mother's and the father's parental rights on August 31, 2014, pursuant to Iowa Code sections 232.116(1)(d), (e), and (*l*).

The mother and father appeal.[1]

## II. Standard of Review.

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

### A. Section 232.116(1)(d).

Under Iowa Code section 232.116(1)(d), the juvenile court may terminate parental rights to a child only when "[t]he court has previously adjudicated the child to be a child in need of assistance *after finding the child to have been physically or sexually abused or neglected*" or another child in the family has been adjudicated "after such a finding." Iowa Code § 232.116(1)(d)(1) (emphasis added). "Physical abuse or neglect" and "abuse or neglect" are terms of art in

---

[1] In the future, we urge appellants to comply with Iowa Rule of Appellate Procedure 6.201(1)(e)(2), which states, "[T]he appellant[s] shall attach to the petition on appeal a copy of [t]he petition for termination of parent rights and any amendments to the petition [and t]he order or judgment terminating parental rights . . . ."

this context. *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). "Within chapter 232, 'physical abuse or neglect' and 'abuse or neglect' means 'any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodial or other person legally responsible for the child.'" *Id.* (citing Iowa Code § 232.2(42)).

In the CINA adjudication order, the juvenile court recited issues with the parents' history of drug use, the fact that a registered sex offender was allowed in the home, and the father's incarceration. The court did not make any findings regarding nonaccidental physical injury suffered by G.B. Our supreme court has concluded it is not sufficient to cite the parents' history of drug use for the proposition that the child has suffered physical injury or is imminently likely to do so to terminate under section 232.116(1)(d). *See J.S.*, 846 N.W.2d at 41–42 ("[W]e do not believe general statements about methamphetamine addiction are enough by themselves to prove that a child is imminently likely to suffer physical harm . . . ."); *see also* § 232.2(6)(b). Although addiction to methamphetamine may be sufficient to establish that a child has suffered or is imminently like to suffer "harmful effects" as a result of the parents' failure to exercise reasonable care in supervising the child, that only allows the court to adjudicate the child a CINA under 232.2(6)(c). A CINA determination under 232.2(6)(c) may not lead to termination of parental rights under section 232.116(1)(d) because section 232.116(1(d) requires a nonaccidental physical injury. *J.S.*, 846 N.W.2d at 41.

Because the juvenile court did not adjudicate G.B. a CINA pursuant to Iowa Code section 232.2(6)(b) after finding him to be physically or sexually abused or neglected or another child in the family to be physically or sexually

abused, the termination of the mother's and father's parental rights may not be premised upon section 232.116(d).

**B. Section 232.116(1)(e).**

Under Iowa Code section 232.116(1)(e), the juvenile court may terminate parental rights to a child only if "[t]here is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child." Iowa Code § 232.116(1)(e)(3). "Significant and meaningful contact" is defined within the section as "the affirmative assumption by the parents of duties encompassed by the role of being a parent," including, but not limited to "financial obligations . . . continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and . . . establish[ing] and maintain[ing] a place of importance in the child's life." *Id.*

The parents have regularly attended visits with G.B. The mother attends as many as three visits a week with the child. The father has attended fewer visits recently because of the difficulty of scheduling with his full-time job, but he has spent time weekly with G.B. since being released to Fort Des Moines in January 2014. Additionally, the father testified he called and talked to G.B. weekly during the time he was incarcerated. The parents have purchased G.B. toys and are responsible for snacks and meals during visits. The child's therapist testified that G.B. is bonded with both parents. Pursuant to the permanency plan, both parents have obtained jobs and have completed an addiction rehabilitation program. We acknowledge there have been instances when the

mother has made inappropriate comments to the child and in front of the child. The statements, while inadvisable, did not prevent the mother from having significant and meaningful contact with G.B.

G.B.'s parents have had difficulties to overcome and had their share of setbacks but now show some signs of progress. Notwithstanding their past difficulties, both the mother and father have maintained significant and meaningful contact with G.B. Upon our de novo review, the termination of the mother's and father's parental rights under section 232.116(e) has not been established by clear and convincing evidence.

### C. Section 232.116(1)(*l*).

Under Iowa Code section 232.116(1)(*l*), the juvenile court may terminate parental rights to a child only if "the parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts." Iowa Code § 232.116(1)(*l*)(2).

The State alleged and the juvenile court found that both of the parents have a "severe, chronic substance abuse problem." That language was from the pre-2012 version of section 232.116(1)(*l*)(2). In 2011, the legislature amended this provision, replacing the phrase "severe, chronic substance abuse problem" with "severe substance-related disorder." *See* 2011 Iowa Acts ch. 121 § 58 (effective July 1, 2012). In the same enactment, the legislature defined "substance-related disorder" as "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual [DSM] of mental disorders published by the American psychiatric association [APA] that results in a functional impairment."

*Id.* § 26 (codified at Iowa Code § 125.2(14)). It is no longer sufficient for the court to assess in lay terms whether the parent suffers from "a severe, chronic substance problem." The definition of substance-related disorder requires consideration of diagnostic criteria from the DSM–5.

Both the State's petitions for termination and the court's ruling relied on outdated statutory language. The court did not make a finding the mother or the father had a severe substance-related disorder as required by the current version of section 232.116(1)(*l*)(2), nor has the State suggested any such evidence exists. Accordingly, the termination of the mother's and father's parental rights under section 232.116(*l*) has not been established by clear and convincing evidence.

**IV. Conclusion.**

After reviewing these petitions on appeal, we have four options for disposition; we may affirm or reverse the order, remand the case, or set the case for briefing. Iowa R. App. P. 6.205. We do not have the option of substituting our own judgment or supplementing the order of the juvenile court. *See id.* Because the State has not established a ground to terminate the parental rights of either parent, we need not address the challenges under sections 232.116(2) and (3). We reverse on both appeals and remand for further proceedings.

**REVERSED ON BOTH APPEALS AND REMANDED.**